UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN HART,

      Plaintiff,                                      Hon. Robert J. Jonker

v.                                                          Case No. 1:25-cv-155

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *Id.* at 224-25.  Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018).  This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 36 years of age on his alleged disability onset date. (PageID.41). He successfully completed high school and worked previously as a poultry farm laborer, food service worker, and nurse assistant. *Id.* Plaintiff applied for DIB benefits on December 21, 2021, and SSI benefits on January 15, 2022, alleging that he had been disabled since July 1, 2020, due to degenerative disc disease of the lumbar spine, narrowing of the spinal cord, bulging discs, bilateral carpal tunnel syndrome, bipolar disorder, panic attacks, and carpal tunnel surgery. (PageID.29, 419).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ William Reamon, in an opinion dated January 25, 2024, determined that Plaintiff did not qualify for disability benefits. (PageID.29-43, 107-49). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also

provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from degenerative disc disease, degenerative joint disease, obstructive sleep apnea, obesity, bipolar disorder, and anxiety, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.32-35).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) he can occasionally climb ladders, ropes, scaffolds, and ramps/stairs;

(2) he can frequently balance and kneel; (3) he can occasionally stoop, crouch, and crawl; (4) he must avoid concentrated exposure to extremes of cold, vibration, and hazards; (5) he must avoid concentrated proximity to dangerous moving machinery and unprotected heights; (6) he can perform simple, routine, repetitive tasks on a sustained basis; (7) he can tolerate occasional interactions with the general public and supervisors; and (8) he can tolerate occasional work setting/work process changes. (PageID.35).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid*.

In this case, a vocational expert testified that there existed approximately 420,000 jobs in the national economy which an individual with Plaintiff's RFC could perform. (PageID.42). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

**I.    Medical Source Opinion**

As part of his disability application, Plaintiff submitted several statements from Dr. Sheila Gendich. (PageID.662-70, 944-47). Dr. Gendich reported that Plaintiff experienced far greater limitations than the ALJ recognized. The ALJ, however, found the doctor's observations less than persuasive. (PageID.39-40). Plaintiff argues that he is entitled to relief because the ALJ's assessment of Dr. Gendich's statements is not supported by substantial evidence.

Because Plaintiff filed his application after March 27, 2017, the ALJ evaluated the opinions in question pursuant to 20 C.F.R. § 416.920c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 416.920c(b)(1).

These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 416.920c(1)-(5). The ALJ must explain his consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* § 416.920c(b)(2), (3). The regulations define "supportability" and "consistency" as follows:

  (1)  Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

  (2)  Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2).

  A.  Dr. Gendich's Statements Regarding Plaintiff's Mental Functioning

Dr. Gendich assessed Plaintiff's mental ability to function in 25 different categories.  (PageID.664-65).  The doctor reported that Plaintiff was: (1) "unable to meet competitive standards" in 15 categories[1]; (2) "seriously limited, but not precluded" from employment in 3 categories[2]; and (3) "limited but satisfactory" in 7 categories[3].  *Id.*  Dr. Gendich also reported that Plaintiff's symptoms would likely

---

[1] These categories included: (1) maintain attention for two-hour segment; (2) work in coordination with or proximity to others without being unduly distracted; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; (4) perform at a consistent pace without an unreasonable number and length of rest periods; (5) ask simple questions or request assistance; (6) deal with normal work stress; (7) interact appropriately with the general public; and (8) maintain socially appropriate behavior.  (PageID.664-65).

[2] These categories are: (1) adhere to basic standards of neatness and cleanliness; (2) respond appropriately to changes in a routine work setting; and (3) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  (PageID.664-65).

[3] These categories are: (1) remember work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) sustain an ordinary routine without special supervision; (5) make

"interfere with attention and concentration needed to perform even simple work tasks. . .25% or more" of the time during a "typical workday."  (PageID.663).  The doctor further reported that Plaintiff's "impairments or treatment would cause [him] to be absent from work. . .more than four days per month."  (PageID.665).

The ALJ concluded that this statement was "not persuasive."  (PageID.39).  In support of this determination, the ALJ observed that Dr. Gendich's statements were inconsistent with the observations and conclusions of other care providers.  Specifically, Plaintiff's other care providers observed that Plaintiff: (1) was cooperative; (2) exhibited no behavioral concerns; (3) exhibited "logical/coherent" thought process; (4) exhibited "intact" judgment; (5) exhibited "good" or "fair" concentration; and (6) was "independent" in daily living skills save "paying bills" and "cooking."  (PageID.604-05, 646, 648-49, 693-95, 716, 723, 726, 730, 734, 737, 741).

The ALJ also noted that Dr. Gendich was not a specialist in treating emotional disorders and, moreover, that the doctor's own contemporaneous observations regarding Plaintiff's emotional well-being were not consistent with her subsequent statements.  (PageID.39).  Specifically, Dr. Gendich often reported that Plaintiff was not experiencing anxiety or depression and that his medications lessened his symptoms.  (PageID.539, 549, 553, 560-61, 565, 570, 890, 960, 980).  The doctor consistently reported that Plaintiff experienced no limitations performing daily

---

simple work-related decisions; (6) accept instructions and respond appropriately to criticism from supervisors; and (7) be aware of normal hazards and take appropriate precautions.   (PageID.664).

activities and no difficulty concentrating, remembering, or making decisions. (PageID.860, 867, 873, 888-89, 959, 965, 972-73, 978-79). The doctor also observed that Plaintiff was cooperative and exhibited no deficiencies in judgment or thought. (PageID.875, 967). The doctor also reported, in August 2023, that Plaintiff was "exercising walking fishing l[]oosing weight." (PageID.954). In sum, Dr. Gendich's contemporaneous treatment notes do not contain insights or observations consistent with the extreme limitations at issue. (PageID.520-74, 853-90, 950-96).

As noted above, the ALJ, in his RFC assessment, limited Plaintiff to simple, routine, and repetitive tasks, only occasional interactions with the general public and supervisors, and only occasional changes in work setting or work process. These limitations are supported by the record. To the extent Dr. Gendich's statements are interpreted as articulating even greater non-exertional limitations, the ALJ reasonably discounted such and his rationale for doing so is supported by substantial evidence.

B.   Dr. Gendich's Statements Regarding Plaintiff's Physical Functioning

With respect to Plaintiff's physical functional abilities, Dr. Gendich reported the following. Plaintiff can continuously sit for 20 minutes and continuously stand for 5-10 minutes. (PageID.945). During an 8-hour workday, Plaintiff can sit and stand/walk for "less than 2 hours" each. (PageID.946). Plaintiff cannot lift any amount of weight and must have his legs elevated when sitting. (PageID.946). Plaintiff can "never" perform the following: (1) look down; (2) turn head left or right; (3) look up; (4) hold head in static position; (5) twist, (6) stoop; or (7) crouch/squat.

(PageID.946-47). Plaintiff's "impairments or treatment" would cause him to be absent from work "more than four days per month." (PageID.947).

As the ALJ concluded, the doctor's extreme opinions are not consistent with the record. Examinations performed by Plaintiff's other care providers revealed results that were consistent with the ALJ's RFC assessment. (PageID.720, 725-27, 730, 733-34, 741-42, 828-29). Likewise, imaging tests, specifically x-rays and an MRI examination of Plaintiff's lumbar spine, were not inconsistent with the ALJ's RFC assessment. Furthermore, as the ALJ noted, examinations conducted by Dr. Gendich revealed results which are inconsistent with her extreme opinions. (PageID.529, 534, 560, 565, 570, 862, 875, 954, 966). The doctor's observation that Plaintiff was exercising, walking, and fishing are also inconsistent with her opinions. In sum, the ALJ reasonably discounted Dr. Gendich's opinions and the reasons articulated by the ALJ are supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                              Respectfully submitted,

Date: December 23, 2025                /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge